**DOULETT v. MUTHER.**

(Court of Appeals of District of Columbia. Submitted November 17, 1921. Decided January 3, 1922.)

Nos. 1424, 1425, 1433–1439.

Patents ⬅93—**Inventor held not guilty of such concealment of invention as forfeited rights.**

Where an employé of a manufacturer of shoes, inventing a tool for use in setting invisible eyelets, completed and successfully operated the device, which was thereafter used in his employer's factory, and one member of the firm and several other persons skilled in the art were familiar with it, and those in whose presence it was operated were not under his control, his request that they should not divulge the invention to any machine company, when prompted by a desire to prevent the appropriation of his invention, and not by any desire to conceal or suppress it, was within his rights, and did not constitute such concealment as forfeited his rights.

Appeal from decisions of the Patent Office.
Interference proceedings between Henry T. Doulett and Lorenz Muther, between Henry T. Doulett and Frederick S. Glines, between Frederick S. Glines and Henry T. Doulett, and between Albert F. Deitsch and Alfred B. Wales, with three proceedings between Alfred F. Deitsch and Henry T. Doulett, and two proceedings between Alfred F. Deitsch and Robert B. Smith. From adverse decisions Doulett,

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Deitsch, and Glines appeal. Decisions in the first two cases reversed, and decisions in the other cases affirmed.

Frederick L. Emery, Lawrence G. Miller, and Edward G. Curtis, all of Boston, Mass., and A. M. Holcombe, of Washington, D. C., for Doulett, Wales, and Smith.

F. J. V. Dakin, of Boston, Mass., for Muther, Glines, and Deitsch.

J. H. Milans and C. T. Milans, both of Washington, D. C., for Deitsch and Glines.

ROBB, Associate Justice. These interferences involve a tool used in setting invisible eyelets in shoes. By stipulation the testimony taken in any one of the interferences may be used in any of the others.

We first will consider No. 1433. That interference involves five counts, of which the first reads as follows:

"1. An eyelet setting device consisting of means for setting eyelets in one or more of the layers of material, comprising an upsetting device having a slightly projecting outwardly and upwardly curved setting shoulder combined with an anvil cooperating therewith, said upsetting device being arranged to spread and progressively turn the end of the eyelet over on said material between the said layers."

Each of the tribunals of the Patent Office found that, while Deitsch conceived the invention in August of 1912, he did substantially nothing toward its reduction to practice prior to his filing date, about two years later, and hence that, as stated by the Assistant Commissioner, he "was utterly lacking in diligence." Each of the tribunals has satisfactorily discussed the evidence bearing upon this question, and we are content to adopt their conclusion without further consideration of that evidence.

Doulett, a stitching room operator, was employed by Leonard & Barrows, shoe manufacturers, of Middleboro, Mass. He commenced his experiments in April of 1913, and by the 24th of September following had completed and successfully operated his Exhibit No. 10, which embodies the subject-matter of the issue in this and the other interferences. From that time on the device was used exclusively in the Leonard & Barrows factory for the setting of invisible eyelets. Five or six other witnesses testified to having seen this machine in successful operation at about the time it was first installed. One of them, an employee of the Regal Shoe Company, was given a sample of the work done on the machine in his presence. The evidence so clearly shows, as found by the Patent Office, the machine thus to have been successfully operated, that we pass, without more, to the question whether Doulett's subsequent conduct amounted to such a concealment of the invention as to deprive him of the fruits thereof.

Doulett was practically without means, and had been cautioned that if representatives of certain corporations should see his device, they probably would copy it, to his injury. Therefore, although the employees of Leonard & Barrows and certain friends were allowed to become perfectly familiar with this invention it was not shown to strangers for several months. In cross-examination Doulett was asked the following question:

"At that time you didn't want anybody, outside of the operator and one or two friends, to see Exhibit W, No. 10 set, for fear they might copy it. Isn't that true?"

His reply was:

"The truth of the matter is that I did not want any machine company to see it."

Early in 1914 Doulett machines were introduced in the Belfast, Me., factory of Leonard & Barrows, and there openly used. It is apparent from the evidence that he appreciated the fact that he had made a valuable invention and had no idea of abandoning it. On August 1, 1914, he filed an application for patent, but this application did not disclose the "contracted portion above the setting shoulder," which forms the subject-matter of the counts in No. 1424, and it was not until November 13th following that Doulett filed another and continuing application covering this feature.

The Examiner of Interferences ruled that Doulett's conduct was justifiable and did not amount to a concealment of the invention, within the rule announced in Mason v. Hepburn, 13 App. D. C. 86, but rather came within the doctrine announced in Oliver v. Felbel, 20 App. D. C. 255, Meyer v. Sarfert, 21 App. D. C. 26, Burson v. Vogel, 29 App. D. C. 388, Gaisman v. Gillette, 36 App. D. C. 440, and Lederer v. Walker, 39 App. D. C. 122. He accordingly awarded all the counts to Doulett. The Examiners in Chief and the Assistant Commissioner awarded the counts in interference No. 1433, the broad counts, to Doulett, on the theory that, even though he concealed the invention, the concealment was terminated by the filing of his earlier application prior to the filing of the Deitsch application, and before either the Glines or Muther patent issued, but they denied to Doulett the narrower claims on the ground of concealment and the finding that he was stirred into activity by the issuance of the two patents above mentioned.

We agree with the Examiner of Interferences that the conduct of Doulett was prompted solely by a desire to prevent the appropriation of his invention by what he conceived to be unfriendly interests, and not by any desire to conceal or suppress it. In the first place, the machine was in daily use in the factory where he was employed. One member of the firm was familiar with its use, and, as already noted, some half a dozen witnesses, most of whom were peculiarly skilled in the art, were equally familiar with it. Knowledge of the invention, therefore, was sufficiently general to insure its preservation, and, because the character of the invention was such as to render its appropriation easy, the conduct of Doulett was consistent and reasonable, in the circumstances. Moreover, he was not operating this machine under conditions that permitted its control by him. On the contrary, the operation of the machine was for his employers and in the presence of witnesses over whom he had no real control. In Jenner v. Bowen, 139 Fed. 556, 71 C. C. A. 540, Judge Lurton, later Mr. Justice Lurton of the Supreme Court, speaking of a use very similar to that of the Doulett machine in this case, said:

"That the number of persons who had an opportunity to see the machine in operation was limited, and included some who, by reason of youth and in-

experience, were not likely to understand or be able to describe the mechanism, is of no great importance, in view of the fact that the inventor made and set up this machine for Bowen for the purpose of being commercially operated. Bowen understood its mechanism and its method of use, and was under no restriction as to the place or manner of its operation, and under no obligation of secrecy."

In the case at bar the witnesses who saw this machine were under no general injunction as to secrecy. They were merely requested not to divulge it to "any machine company," and we think this precaution was clearly within the inventor's rights.

In No. 1424, involving the narrower claims, the earliest date awarded Muther for conception was January of 1914. Inasmuch as Doulett, as early as September of 1913, had successfully reduced to practice and thereafter continued to operate in the manner already detailed a machine embodying the subject-matter of this interference, we agree with the Examiner of Interferences that the award of priority should go to Doulett. In No. 1425, wherein the counts are limited as in No. 1424, since March 19, 1914, is the earliest date claimed by Glines for conception, it follows that priority also should be given Doulett, as found by the Examiner of Interferences. In each of the other interferences we accept the reasoning and conclusions of the Patent Office.

The decisions will be affirmed in Nos. 1433, 1434, 1435, 1436, 1437, 1438, and 1439, and reversed in Nos. 1424 and 1425.

Affirmed in Nos. 1433, 1434, 1435, 1436, 1437, 1438, and 1439.
Reversed in Nos. 1424 and 1425.

Mr. Justice HITZ, of the Supreme Court of the District of Columbia, sat in the place of Mr. Justice VAN ORSDEL, in the hearing and determination of this appeal.