## KERNER INCINERATOR CO. v. TOWNSEND ESTATES, Inc., et al.

District Court, N. D. Ohio, E. D. January 26, 1926.

On Rehearing, January 19, 1927.

No. 1306.

Patents ☞328—1,108,164, claims 1, 2, 3, 5, and 6, for garbage and refuse incinerator, held valid and infringed.

Kerner patent, No. 1,108,164, claims 1, 2, 3, 5, and 6, for garbage and refuse incinerator to dispose of refuse in apartment buildings, *held* valid, as against claims of anticipation and prior use, and infringed.

In Equity. Patent infringement suit by the Kerner Incinerator Company against the Townsend Estates, Inc., and another. Decree for plaintiff.

Decree affirmed 27 F.(2d) 606.

Laurence A. Janney and Emery, Booth, Janney & Varney, all of Chicago, Ill., for plaintiff.

Gaughan & Collins, of Cleveland, Ohio, and Frease & Bond, of Canton, Ohio, for defendants.

WESTENHAVER, District Judge. This is the usual patent infringement suit. It is based on United States letters patent 1,108,-

164, issued to Theodore Kerner, August 25, 1914, on application filed April 15, 1912, and by him assigned to plaintiff. Claims 1, 2, 3, 5, and 6 are in issue. The defenses are invalidity, in view of the prior art, for lack of novelty and of patentable invention, and also noninfringement, in view of the specific limitations imposed by the patent claims.

As is usual in patent cases, the record is quite voluminous. Defendant has cited and relies on a large volume of prior art. The parties are disagreed sharply on the question of invention, and also on the interpretation of the claims. Due consideration has been given to all this prior art, and to the respective contentions of counsel. As it is highly improbable that parties or counsel will rest content with my decision, I shall merely state my conclusions briefly, with such explanatory comment as will be sufficient to show the basis on which they are rested.

Kerner's invention is for a garbage and refuse incinerator. The inventor's object, as stated in his patent, was to dispose of garbage and refuse, such as paper, bottles, tin cans, etc., in apartment buildings, hospitals, and residences, in a convenient and sanitary manner, and to utilize for this purpose chimneys, or flues with which such buildings are ordinarily provided, and largely without the aid of other fuel than the combustible matter of the refuse and garbage. His invention has accomplished these results. It has had marked commercial success. In the early days it was difficult to prevail upon architects and builders to adopt and specify such an incinerator as a part of building plans, but, after proving its efficiency, and in recent years, it has been widely installed and used. Undoubtedly Kerner was the first to produce and install an efficient and practical device of this nature. It is not too much to say that he has created a new art or industry. As usually happens when success has been thus attained, others have entered the same field and developed competing devices, having more or less the same characteristics, to accomplish the same purpose. Defendant's device is of that nature. Its only differences pertain to the form of what is called the by-pass, and of what is called the overhanging wall of the cremating chamber.

Of the prior art now relied on to repel novelty and to disprove invention, part was cited and considered by the Patent Examiner. Of the patents considered by him, defendant's counsel stress, as most pertinent, Close, 380,383; Lowe, 949,986; and Vale, 817,022. Kerner's patent has been litigated in the District Court of Minnesota, and its validity

sustained in an opinion by District Judge Morris, filed July 9, 1920. So far as the answer in the case discloses, the prior art relied on therein as most pertinent was also that considered by the Patent Examiner. In his opinion, which was delivered orally, District Judge Morris discusses only the patent to Close.

It is now contended by defendant's counsel that the prior art considered by the Examiner and by Judge Morris is not all, nor even the most pertinent. Of the additional art now cited, defendant's counsel stresses, specially, Robb, 376,550; Field, 806,127; and Thum, 807,219. In particular it is said that Robb is a complete anticipation. In my opinion, Lowe, cited in the Patent Office and in the case heard by Judge Morris, is the most pertinent. He was the only inventor consciously intending to devise a structure designed to accomplish the same results as does Kerner. The structure illustrated in Lowe's drawings and described in his specifications, is, in my opinion, the nearest approximation to Kerner. Robb was trying to accomplish something different. The pertinency of Robb resides more in the language of the specifications, and particularly of the claims, than in similarity of structure or of function.

A detailed description of Kerner's device is unnecessary. His commercial apparatus follows closely Fig. 3. It does not usually include a stove or furnace with the draft pipe entering the ventilating flue or garbage chute. This, however, is not an essential element of Kerner's invention, nor specifically called for by any of the claims of his patent.

Nor would a detailed description of the structures disclosed in the several prior art patents serve any useful purpose. It is sufficient to say that neither Lowe nor Robb, separately or in combination with the others cited, anticipates Kerner. This, I think, is too clear for controversy. Whether, in view of that art, the quality of invention should be accorded to Kerner, is more difficult. Invention is always a question of fact. It depends upon the special facts of each case. Whether it can be found to exist can be answered only after an examination of all the art. In my opinion, Kerner made a meritorious invention.

In this instance, the Patent Examiner, upon consideration of art as persuasive as any now cited, passed the patent to issue. Upon like consideration, District Judge Morris found in favor of patentable novelty and invention. It does not detract from the weight to be given his opinion that he

deemed it unnecessary to discuss any other patent than Close, nor that he did not find time to prepare and file a written opinion. I agree with his conclusion that more than mere mechanical skill was required to develop the Kerner structure from the prior art. Lowe, as late as 1910, attempted to do so, and yet, with Close, Robb, Field, and Thum before him, could do no better than to produce the complicated and impracticable device disclosed in his patent. He was unable to reach Kerner's primary conception of a single flue, capable of serving as a chimney and garbage chute and a ventilating flue, and of a combined garbage receptacle and crematory chamber created by enlarging the lower end of that single flue. Lowe, even more than Robb, was attempting to accomplish what Kerner did, but fell far short. His structure is not capable of realizing the benefits and advantages sought and obtained by Kerner. Aside from the quality of the mental concept, it is evident, from this futile attempt, that more than mechanical skill was required to reorganize and reconstruct Lowe or Robb into the Kerner device, or to assemble therefrom into a practical apparatus the elements of the Kerner patent. In attaining that mental conception, and in devising means to embody it, the other patents cited add little or nothing to Lowe or Robb, and do not call for separate comment.

The authorities have been examined. It will serve no useful purpose to review them. It is unfortunately true that extracts can be quoted from opinions tending to support any side of any contention which one cares to make in this domain of the patent law. It is for this reason that adjudged cases are usually of little help in determining whether invention is present or absent. For purposes of illustration, however, attention is called to Concrete Appliances Co. v. Meinken (6 C. C. A.) 262 F. 958, involving Callahan patent, 946,719, for a concrete distributor. The reasoning of that case is pertinent to the present situation. The considerations making in favor of invention in Kerner's patent are much stronger than were there held sufficient to sustain the Callahan patent. In my opinion, invention over the prior art is much clearer upon the present record than it was in Callahan's favor upon that record. I am not overlooking the fact that the United States Supreme Court, in Concrete Appliance Co. v. Glomery,[1] decided November 16, 1925, held the Callahan patent invalid; but this conclusion was reached upon the basis of additional prior art, and it is said that the conflict with the Meinken Case is apparent,

and not real, because the invalidating prior art was not then brought forward. Upon principle, the Meinken Case remains a persuasive authority.

Infringement is denied chiefly because of the limited nature of all the claims of the Kerner patent in issue. It cannot be denied that defendant's apparatus functions in precisely the same way and realizes the same results in no different or better manner. It was testified by Burt Sanborn, janitor in charge of the apartment in which defendant's infringing structure was installed, that he operates it in the manner described in Kerner's specifications, rather than in the way described in defendant's advertising literature, using supplementary fuel only at intervals, in order to incinerate the noncombustible residuum of the refuse and garbage. As already indicated, the substantial difference is in the by-pass and the overhanging wall. Defendant's device distributes the by-pass from the ash pit below the grate to the cremating chamber above the garbage and refuse around all four sides of the garbage receptacle; whereas Kerner places the by-pass at one side. Defendant places the flue in the center of the top of the cremating chamber, with a wall formed by the top of the crematory chamber, overhanging all the by-passes; whereas Kerner placed his flue at that side opposite the by-pass, thereby forming a more extended overhanging wall. In function and in result there is no substantial difference.

All the claims in issue of Kerner's patent call for a cremating chamber "having an overhanging wall at its top to one side of the flue leading therefrom," and also a by-pass from the ash pit below the grate, opening at its upper end "into the space above the refuse receptacle and beneath the overhanging wall." It is insisted that these are specific limitations imposed in the Patent Office and accepted by Kerner, in order to avoid the Patent Examiner's interpretation of the prior art and to get a patent, and that Kerner is so limited that any structure modifying the overhanging wall or by-pass into a substantially different form does not infringe. It is true Kerner's original claims were all rejected, and that thereafter two amendments were made to his specifications, one in lines 51 to 53, page 1, and the other in lines 90 to 97, page 1, and that an entirely new set of claims was presented, all of which contain the language above quoted. These amendments and substituted claims were presented after a personal interview between Kerner's solicitor and the Patent Examiner.

27 F.(2d)—38½  ·  [1] 269 U. S. 177, 46 S. Ct. 42, 70 L. Ed. 222.

The extent to which claims are limited, and the range of equivalency to which Kerner is entitled, are questions not free from difficulty. However, the original specification and claims call for a cremating chamber, formed by the enlargement of the flue at its lower end; a refuse receptacle, formed by the grate and the enlarged portion of the flue; a grate of the form shown either in Fig. 1 or Fig. 2, and a by-pass to permit the unobstructed circulation of air from the ash pit below the grate, around, through, and across the top of the refuse or garbage. The primary function of the by-pass was to permit this free and unobstructed circulation of air, either with or without the aid of artificial means from below the mass of refuse or garbage, through, around, and over it, in order that the garbage or wet refuse might be dried preparatory to burning it. This was Kerner's primary conception. In his original specifications, no exact location was given for the by-pass or the flue. The by-pass might have been in a vertical line with the flue. The amendment gave the flue and the by-pass distinctive positions. The added object, if any, to be thus attained, was to direct the air currents across the refuse material in the receptacle. The function, however, of maintaining an unobstructed draft, either with or without artificial means, through, around, and over the garbage, was fully and clearly disclosed in the original specifications. It does not seem to me that a particular form of overhanging wall was intended to be imposed as a limiting element in the claims.

Kerner is entitled to a range of equivalents commensurate with his contribution to the garbage and refuse incinerator art. He has made a meritorious invention, which has gone into wide use. It would be a narrow construction to limit his claims to an incinerator having an overhanging wall on one side and a flue positioned on the opposite side, or to a single by-pass at one side of the cremating chamber, having its upper end discharging under that wall. In my opinion, nothing in the Patent Office proceedings, the claims, or the law requires such a narrow construction. The lateral enlargement of the lower end of the draft flue or garbage chute produces overhanging walls. If the flue is at one side, the overhanging wall will be on the other. If the flue is in the center the wall will overhang all around it, just as in an ordinary stove. Defendant, by placing its flue in the center of the top of the crematory furnace, has created an overhanging wall of lesser extent on all four sides of the chamber. In addition thereto, defendant has distribut-ed the by-pass around all four sides of the chamber, but the function of defendant's different by-pass is to permit the free and unobstructed circulation of air from the ash pit below the grate, through, around, and above the garbage or wet refuse, whereby it may be dried, preparatory to being burned. Thus it appears that the substantial purpose and function remain the same. The changes of form in the grate, by-pass, overhanging wall, and in the location of the flue, do not introduce any new principle of operation. In my opinion, all the claims in issue are infringed.

A decree will be entered in conformity to the views herein expressed. Plaintiff will also recover costs. If desired, an accounting of profits and damages will be ordered.

## On Rehearing.

On January 26, 1926, my original opinion herein was filed. On March 31, 1926, defendants filed a petition for rehearing, which was heard upon elaborate affidavits and exhibits and was duly granted. It did not appear that the new evidence might not have been discovered prior to the original hearing by the exercise of a reasonable degree of diligence. In patent litigation, however, the public right is always involved, and ought not to be sacrificed by too strict an application of the rules of diligence applicable in a litigation purely private. It was deemed by me in the public interest that all substantial evidence tending to show invalidity should be brought upon the record and considered, as by this method, the litigation over this patent may be brought to a speedier end. Hence, not only was the rehearing granted, but leave was given to amend the answers on file.

The record upon the original hearing was voluminous, but its volume has now been more than tripled. The new defenses are, first, that the invention of the patent in suit was on sale and in public use more than two years prior to the filing of the patent application; and, second, that invention is lacking in view of the prior art now disclosed by various patents, viz. four patents issued to J. J. Dube, under which has been made and sold the Kewanee garbage crematory; two patents issued to O. M. Shannon, under which has been made and sold a garbage crematory known as the Incinerite; and four patents issued to J. J. Prescott, under which has been made and sold another garbage crematory, known as the "Pyrofuse." Certain additional prior art has been brought forward, but all of the new evidence and argument, which is substantial, revolves around these defenses.

Kerner's application for the patent in suit was filed April 15, 1912. The critical date, therefore, is April 15, 1910. Kerner's first installation of an incinerator was in a six-suite apartment building of John W. Owen, in Racine, Wis. This installation is described in Defendants' Exhibit D, introduced on the original hearing, being the first advertising catalogue published and distributed when Kerner began to market his incinerator. It was made in the early part of the year 1909. It follows closely the construction illustrated in Fig. 1 of the patent. The chief, if not the only, differences are in the depth and pitch of the grate. It has remained in the Owen apartment, and has been used continuously ever since, although it appears that at some time the pipe *n*, leading from the furnace into the crematory chamber at a point below the grate, has been removed, and that at some time a gas burner was installed beneath the grate, approximately at the position designated by the letter *p*. These changes were made by Owen or his janitor, without the direction of Kerner.

Plaintiff's commercial form follows closely the construction illustrated by Fig. 3 and is of a later date. It was designed within a period not greater than six weeks prior to the filing of his application, and was first installed as an improvement to an incinerator previously built in his four-suite apartment on Biddle street, Milwaukee. The chief changes in this last installation consist in the vertical grate, with a specific by-pass for air or products of combustion from below the garbage receptacle, around the garbage, and beneath the overhanging wall, and out the flue or chimney. The capacity of the garbage receptacle, and the proportions of receptacle, chamber, and smoke flue, differ from those adopted in the Owen installation, and are substantially the same as are now found in plaintiff's commercial incinerator.

The question to be decided is whether this Owen installation was a sale or public use by another than the inventor, or was a permissible experimental use. The question is a mixed one of fact and law. The facts are not really in dispute. The differences of opinion result from the varying inferences which may be drawn from what admittedly was done. It will be sufficient to state these facts, without reviewing the evidence.

In 1908 John W. Owen had acquired an existing residence building in Racine, which he desired to convert into a six-suite apartment house. To bring about this result, it was necessary to undertake a considerable work of reconstruction. As he and Kerner were well acquainted, he sought the services of the latter as an architect and engineer to assist in checking or preparing plans and in superintending the construction work. Kerner had since 1905 been giving consideration to the subject of garbage disposal from residences and apartments, and had in fact installed in his Pasadena apartment in Milwaukee, four flues down which garbage might be fed from apartments on different floors to an enlarged chamber at the ground level. These flues served no other purpose than carriers for the garbage. No provision was made for cremating the garbage thus accumulated, but the same was removed by city garbage collectors. He represented to Owen that the latter's building was admirably suited for the installation and try-out of a garbage incinerator such as he had in mind. Owen readily consented that the installation might be made, and it was made and installed in the early part of the year 1909.

The central chimney or flue, such as is illustrated in Fig. 1, was constructed for this purpose under Kerner's supervision and in accordance with his plans. The castings for the grates were made and procured in accordance with his designs. The labor and material cost of constructing the chimney flue, with its enlarged chamber at its lower end, and of procuring and installing grates, including their several doors and the self-closing chute doors in each apartment, was paid by Owen. Nothing was paid or agreed to be paid to Kerner for his invention, either as a lump sum or by way of royalty. Kerner was paid in 1908 the sum of $40, and in April, 1909, an additional sum of $83.90, for his services. The evidence is clear that these sums were paid only for his services as engineer and supervising architect, and for no other purpose.

Undoubtedly title to the incinerator thus constructed, passed to and remained with Owen as the owner of the building. There is some disagreement in the evidence as to the extent of the subsequent supervision or observation of Kerner over its operation. It adequately appears, however, both from the documentary as well as the oral evidence, that Kerner was frequently in Racine, where he then owned property; that he called at the Owen apartment, examined the incinerator and talked with the janitor and others relative to its operation; and that he made from time to time suggestions as to how troubles might be corrected. Owen testifies that the installation was from the first successful and satisfactory. He became convinced later that

the furnace draft pipe, leading into the crematory chamber below the garbage grate, was useless, and had it removed. The only other difficulty came from choking, due to the angle at which the inclined part of the grate was disposed against the chamber wall. This angle was only 45 degrees, being substantially the angle of repose for garbage, and in consequence the garbage was not completely incinerated, but was sometimes left partly burned on the inclined grate, and had to be raked down or otherwise manipulated. In Kerner's next installation in the Biddle street apartment, made during the summer of 1910, he made the garbage receptacle deeper and narrower, and increased the angle of the inclined part of the grate to 66 degrees. The angle finally adopted, as shown in Fig. 1, is approximately 55 degrees. Eventually, as has been said, Kerner determined upon the vertical grate, with a by-pass as shown in Fig. 3, which is now the one commercially used.

Upon due consideration of the law and the evidence, I am of opinion that the Owen installation and use was not a public use, or a putting on sale, within the rules of law on that subject, but was only a permissible experimentation. Plaintiff contends that its success or failure could not be determined by a single test, or a brief period of observation, but that the incinerator had to be tried out under varying conditions, requiring a period of not less than a year. In my opinion, these contentions are well founded. The incinerator was designed to serve six separate apartments. How it would perform in taking care of one or a few apartments was not conclusive as to how it would perform if required to take care of the waste and garbage from six apartments. Furthermore, the character of the garbage varies with the season of the year. In summer months there is less combustible material fed down the chutes than during the winter months. In the summer months there is a large proportion of heavy, noncombustible, vegetable matter; whereas during the winter months there is a larger proportion of paper, waste, and combustible material. The situation is not one in which success or failure could be determined merely by filling the garbage receptacle and starting a fire.

It appears that the first tenant moved into the Owen building in June, 1909. The next two tenants moved in during September and October. The evidence is clear that it was not until December, 1909, that all of the apartments were filled. In the meantime and thereafter, as late as 1910 and 1911, Kerner was still engaged in observing the operations

of the Owen installation, and making changes for his new installation at the Biddle street apartment, and in modifying that installation. The evidence is convincing that, no matter how much Kerner may have been afflicted with the usual optimism of inventors, he was none the less still in a doubtful frame of mind, was carefully studying all the problems involved, and developing and experimenting with his invention, in order to insure a specific result.

The authorities will not be reviewed. This labor was performed by me in Austin Machinery Corp'n v. Buckeye Traction Ditcher Company, unpublished opinion filed May 5, 1924,[1] with which counsel are familiar. Even if none of the views of law therein stated were disapproved on appeal, I should still be of opinion that this case falls within the doctrines of Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000, and Beedle v. Bennett, 122 U. S. 71, 7 S. Ct. 1090, 30 L. Ed. 1074, and not within the doctrines of Smith & Griggs Mfg. Co. v. Sprague, 123 U. S. 249, 8 S. Ct. 122, 31 L. Ed. 141, Jenner v. Bowen (6 C. C. A.) 139 F. 556, or Delemater v. Heath (2 C. C. A.) 58 F. 414. This conclusion is reinforced, if not compelled, by the Circuit Court of Appeals opinion in Austin Machinery Corp'n v. Buckeye Traction Ditcher Co. (6 C. C. A.) 13 F. (2d) 697. This case is an authority for the proposition that a use may still be experimental, even though, as between the parties, title has passed to the construction embodying the invention. It is also authority for the proposition that a clear preponderance of the evidence is sufficient to establish the fact that the use was experimental, even though the title had passed more than two years before the patent application was filed.

The prior art relied on to deprive Kerner's patent of the quality of invention was adequately considered in my original opinion. The additional art now relied on for that purpose will be considered en masse. Defendants' additional position, briefly stated, seems to be that the Owen prior use deprives Kerner of novelty, except as to the vertical grate and by-pass illustrated in Fig. 3; that this form of grate and by-pass is anticipated by the disclosures of the new prior art; or that, if not anticipated, no invention was involved in transferring from that patent art, and the commercial devices made in conformity therewith, the by-pass to the Kerner combination. The first of these contentions, as has been shown, is unsound, for the reason that the Owen installation was a permissible experi-

---

[1] Withheld from publication at request of judge. Decree reversed (C. C. A.) 13 F. (2d) 697.

ment. The rest of them are, in my opinion, unsound, because the quality of invention is not lacking, even though Kerner, in developing his final and complete combination, appropriated a by-pass from the analogous art.

Dube, Shannon, and Prescott approached the problem of garbage disposal or incineration from an entirely different point of view. Unlike Lowe, considered in my original opinion, they did not approximate Kerner's inventive concept. Each of them was working along familiar and well-beaten paths. What they were trying to do was to improve upon existing stoves or furnaces, so as to make them efficient in cremating garbage. Their new devices are nothing more nor less than improved garbage stoves. They began with a stove or furnace, and added to it, above the fuel bed or fire box, a garbage basket or receptacle of some form. They appreciated that noxious gases and odors might be driven off during the process of combustion. They realized that the body of garbage above the fire might interfere with combustion, and might, perhaps, at times wholly prevent it. Their inventive concepts, briefly stated, consisted merely in conveying the air draft from the fire below the garbage, through or around it, so as to procure at all times a free-burning fire. All of them relied upon fuel and an intense fire below the grate, and desired only to get the flame through or above the bed of garbage. Thus it appears that their inventive concept was simply a step forward from the existing garbage stove or furnace, with means to keep open the draft from the fire box either through or around the garbage.

The Kewanee garbage crematory, marketed under the Dube patents, the Incinerite, marketed under the Shannon patents, the Pyrofuse, marketed under the Prescott patents, have all had a considerable sale. The Kewanee and Incinerite had a place in the market before Kerner entered the field. All three have ever since been, and still are being, made and sold, although it now appears that two of them have appropriated some part, if not all, of the Kerner construction. No contention has ever been made that either one of the three, embodying somewhat similar principles and functioning substantially in the same way, are an infringement one of the other, or that Kerner infringes any one of the claims of the several patents under which they are made and sold. They are distinct and distinguishable devices.

Kerner's inventive concept was wholly different. While Dube, Shannon, and Prescott were working forward from and improving upon garbage stoves intended as separate installations in a basement or a kitchen, and providing fuel and means to burn the accumulated garbage, Kerner attained at one bound the important concept of a single incinerator intended to serve an entire building, having many floors, and housing many families. In doing this, he departed from existing practices. To devise means to embody his concept, required inventive genius of no mean order. In looking back, it can now be said that his concept and means are simple; but the numerous patents for incinerators of the garbage stove type are convincing evidence that, looking forward, neither the concept nor the means were obvious. The advantages of Kerner's invention are many. They were adequately stated in my original opinion, and need not be repeated.

Kerner's invention is admittedly a combination of elements; it may be of old elements. They are, however, wholly new in his specific combination, and produce an entirely new and a highly beneficial result. His invention is a garbage and refuse incinerator. It is a new, unitary structure. It is not a mere aggregation of old elements, accomplishing no new and different result, nor functioning in any new or different manner. Its elements are: A chimney flue, with side doors, serving as a garbage conduit; a crematory chamber, formed by a lateral enlargement of the chimney or flue at its lower end; a refuse-containing receptacle in that enlarged chamber, lying below the overhanging wall and the chimney flue or conduit; and a by-pass, leading from below the garbage receptacle to a point above it, and opening below the overhanging wall. Of these elements, the least that can be said is that the first two are wholly new in a household incinerator. They do not appear in a like combination in the prior art. Even if it be true that a similar by-pass is found in Dube and others, or that there is a similar garbage receptacle in some of the garbage stoves, anticipation is not thereby shown, nor is the quality of invention destroyed. No one, without the exercise of inventive talent, could have selected from the prior art these several elements of Kerner's invention and have combined them into a unitary structure. Even the garbage receptacle and by-pass had to be redesigned and combined in a way which, it seems to me, is not obvious.

Upon mature consideration, no reason is perceived to modify the conclusion and opinion already reached and announced. In conformity to the views herein expressed, the decree previously entered will be re-entered as the final judgment of this court. Full costs will be allowed.