# BEEDLE *v.* BENNETT.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

Submitted January 7, 1887. — Decided May 23, 1887.

If a bill in equity to restrain an infringement of letters-patent be filed before the expiration of the patent, the jurisdiction of the Ci.  .uit Court is not defeated by the expiration of the patent by lapse of time before the final decree.

The case of *Eames* v. *Andrews*, just decided, is applied to the issues in this case, so far as they are identical with those in that case.

The use of this invention by the inventor in the manner stated in the opinion of the court, and his delay in applying for a patent under the circumstances therein detailed for more than two years prior to his application, did not constitute an abandonment of his invention, or a dedication of it to the public, and did not forfeit his right to a patent under the law, as it stood at the time of his application.

The use by the respondents of driven wells for their personal use on their farms, which wells were operated by means of the process patented to Green, constituted an infringement of that patent.

BILL in equity to restrain infringements of letters-patent. The patent expired by its own limitation after the filing of the bill, and before final decree. The final decree and allowance of appeal were as follows:

"This cause coming on to be heard upon the pleadings in agreed statement of facts and arguments of counsel, the court finds the reissued letters-patent sued on valid, and to have been infringed by defendant, and that the complainants have an established license fee of $10 per well driven by the process described and claimed in the patent, for which said sum, and interest from the 15th day of May, 1883, the date of filing the bill herein, the complainants are entitled to a decree which, to the first day of this term, amounts to $12.03.

"The patent having expired, it is ordered, adjudged, and decreed that the court [complainants] do recover the sum of $12.03 per well driven in accordance with said patent, with interest from the 5th day of October, 1886, and his costs, to be taxed.

" An appeal being prayed by defendants, it is allowed, and bond fixed at $250, and it is ordered that the other causes pending in this court on said patent be stayed until such appeal has been decided by the Supreme Court, and no entry or decree be made in them pending said appeal."

The case is stated in the opinion of the court.

*Mr. Arthur Stem* for appellant.

*Mr. John F. Follett, Mr. David M. Hyman,* and *Mr. Thomas H. Kelley* for appellees.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is a bill in equity filed by the appellees May 15, 1883, to restrain the alleged infringement of reissued letters-patent No. 4372, issued to Nelson W. Green, for a driven well. The cause was heard by stipulation between the parties upon an agreed statement of facts set out in the record, as follows :

" For the purpose of saving the expense of taking testimony, it is hereby agreed by and between the parties hereto that the above cause and the others hereinafter referred to may be tried upon the following agreed statement of facts, said statement to be accepted as proof of the facts recited as fully and completely as if the same had been duly and formally proven.

"It is agreed that Nelson W. Green was the patentee of a new and valuable process in the construction of wells, and claimed to be its first and original inventor, for which process he received original letters-patent of the United States, No. 73,425, on the 14th day of January, 1868, and for which reissue letters-patent No. 4372 were granted to Nelson W. Green on May 9, 1871, the application for which having been filed February 24, 1871.

" That the title to the letters-patent sued on for the state of Ohio is in the complainants.

" That the defendants have had in use on their farm for the past seven or eight years one or more driven wells, which wells were put down for the defendants by an ordinary well-driver

in the following manner : A tube, of which the lower portion was perforated with small holes and the lower end provided with a point, was driven into the ground until it projected into the water, without removing the earth upwards, as in boring.

" The water then entered the tube through the perforations and was pumped up through the tube by an ordinary pump.

" That the defendants have never driven wells for themselves except as above described or for other purposes ; never have sold or offered for sale driven wells or the materials for driving them, but have simply used their own wells for their personal use on their farms.

" It is agreed that printed copies of the original and reissued letters-patent granted to N. W. Green in 1868 and 1871, Nos. 73,425 and 4372, respectively, may be offered in evidence at the hearing, and may be accepted as proof with the same force and. effect as if formally proven.

" That the said N. W. Green made his alleged invention or discovery as early as 1861, when he put down on his own grounds, at Cortland, New York, the first driven well for the purpose of demonstrating his discovery.

" That he, at the time of his alleged invention, claimed to have made a valuable discovery and to have invented a new process.

" That he then declared an intention to secure his process by letters-patent and expressed his belief that large profits would accrue therefrom.

" That he at that time, having been partly educated at West Point, was engaged in organizing a regiment at Cortland, N. Y., his residence, and was expecting soon to take part in the war of the Rebellion.

" That in June, 1861, he put down a well at his house in Cortland, and in October, 1861, he publicly drove a well, in the manner described in his original patent, at the fair grounds near Cortland, for the use of the soldiers in camp, and demonstrated to his own complete satisfaction its success.

" That he gave orders and directions for the construction of proper apparatus for driving such wells, and made arrangements for its transportation with his regiment as it was moved to the seat of war.

"That on the 6th of December, 1861, while in discharge of what seemed to be his duty, he felt compelled to shoot one of the captains of his regiment named McNett; that the shot was not mortal, but inflicted serious injury; that in the then state of the public mind this occasion gave rise to intense public excitement, out of which sprang a controversy of extraordinary bitterness, involving numerous persons and continuing for several years; that the effect upon Green was disastrous in the extreme; that he was suspended from his command, then tried by a court of inquiry at Albany, and reinstated in command; that his regiment, after having, it is said, required the protection of a battery to save it from violence at the hands of evil-disposed people of the country, removed to Washington, where Green was relieved from command, and then dismissed the service, and subjected to military charges.

"That he was, in addition, harassed by civil suits brought to charge him with a personal liability for articles used by his regiment.

"That he was also arrested and then indicted for the shooting of McNett, and after repeated postponements of the trial, effected because of the excited state of the public mind, was tried in 1866, and the jury, having disagreed, was discharged.

"That during this period he also became involved in church difficulties arising out of the shooting of McNett; was expelled from the church and compelled to appeal to the bishop, and also became involved in litigation with the pastor of his church.

"That his efforts during this period to secure a reversal of the order dismissing him from the service were constant and absorbing and were attended with such anxiety of mind as to give rise to the charge that he was insane.

"That this state of things continued up to 1866, during which period he was of necessity often absent from Cortland, at Albany and at Washington, and that he was compelled to devote his entire time to the controversy in which he had become involved, abandoning all other occupation and exhausting all his means.

"That in November, 1865, when Green saw, by an adver-

tisement in the papers, that driven wells were being put down, although he was advised by counsel defending him on the indictment for the shooting of McNett not to apply for a patent, as he would thereby increase the number of his enemies and prejudice him on the trial of the indictment, then about to come on, he nevertheless did then, and in opposition to the advice of his counsel, file his application and assert his right to the invention.

"That the said Green, during this period aforesaid, never declared any intention of abandoning his said discovery and invention, and that, having so made his application as aforesaid, original letters-patent were granted the said N. W. Green, January 14, 1868.

"It is further agreed that whatever order or decree is made in this cause the same shall be made in all the cases pending in this court in which the same parties are complainants, a list of which cases, with the title and number thereof, is hereto attached and made a part of this stipulation.

"It is further admitted that the complainants' price for settling for infringement under the above patent without suit has been ten dollars per well and the recognition of complainants' rights, and that the complainants offered to settle on such terms with these defendants before bringing suit, which offer was refused."

A decree was rendered in favor of the complainants on the 6th day of December, 1886, but, as at that time the patent had expired, no injunction was granted. The amount of the damages awarded was at the rate of $10 for each well used, that being the amount of royalty which the complainants had offered to take before suit brought, and admitted to be the customary price for the same, as a license fee. The defendant prosecutes the present appeal.

As the patent was in force at the time the bill was filed, and the complainants were entitled to a preliminary injunction at that time, the jurisdiction of the court is not defeated by the expiration of the patent by lapse of time before final decree. There is nothing in the case of *Root* v. *Railway Co.*, 105 U. S. 189, to sustain the objection made by the appellant

on this account. See, also, *Clark* v. *Wooster*, 119 U. S. 322, 325, and cases there cited. All other defences made in the cause, except that of prior public use and the defendant's infringement, have been passed upon in the case of *Eames* v. *Andrews*, just decided.

In the present case the appellant contends that the patentee publicly used his invention more than two years before he applied for his patent, and thereby forfeited his right to a patent under the law. This defence was raised and considered, upon facts substantially the same, in the case of *Andrews* v. *Carman*, 13 Blatchford, 307, and also in the case of *Andrews* v. *Cross*, 19 Blatchford, 294. The law governing the subject of the alleged dedication and abandonment by Green of his invention prior to obtaining his patent is that which was in force prior to November, 1865, when he made his application. By the patent act of 1870, as well as by the Revised Statutes, all rights previously acquired were preserved. The law, therefore, applicable to the question, is to be found in the acts of 1836 and 1839. The act of 1839, as has repeatedly been held, has no effect to invalidate a patent, unless there be proof of abandonment, or of a use of the invention for more than two years prior to the application for the patent. The only facts from which such an abandonment or dedication can be inferred are, that Green, in June, 1861, put down a well at his house in Cortland, New York; that, in October, 1861, he publicly drove a well, in the manner described in his original patent, at the fair grounds near Cortland, for the use of the soldiers in camp, and demonstrated to his complete satisfaction its success; and that he gave orders and directions for the construction of proper apparatus for the driving of such wells, and made arrangements for its transportation with his regiment as it was moved to the seat of war. The circumstances of delay, which intervened between that date and the time when he made his application for his patent in November, 1865, are stated in the agreed statement of facts. Those circumstances sufficiently rebut any presumptions which might otherwise have arisen of an intention on his part to abandon and dedicate to the use of the public the invention described

in his patent. The wells made by Green himself at Cortland, and at the fair grounds near Cortland, for the use of his soldiers, were his first experiments. In respect to these, it was said by Judge Benedict, in *Andrews* v. *Carman,* 13 Blatchford, 307, 325 : "The first experiment was a success in this, that it proved the possibility of obtaining a supply of water by this process; but, of course, it could not prove that a tube could be driven down to a water-bearing stratum in all localities, with the cheapness and dispatch necessary to render the process one of general utility. It was natural, therefore, to suppose, that, before the process could be declared to be satisfactory, other experiments, in other and different localities, should be made. He could, by law, use his invention for this purpose, and permit it to be used, for two years, without forfeiting his right to a patent. Under such circumstances, it would be going far to say, that his act of permitting the use of his process at the camp in Cortland, where his regiment was then in camp, and of providing material wherewith to construct such wells for his regiment when it should move into hostile territory, amounted to a dedication of his invention to public use, and worked a forfeiture of his right to it."

Section 7 of the act of March 3, 1839, 5 Stat. 353, 354, protects every one who had purchased or constructed the subject of the invention prior to the application for the patent, and adds as follows: "And no patent shall be held to be invalid by reason of such purchase, sale, or use prior to the application for a patent as aforesaid, except on proof of abandonment of such invention to the public, or that such purchase, sale, or prior use has been for more than two years prior to such application for a patent." There is no evidence in the record of any use or sale of the invention by Green before his application for a patent, and no evidence from which to conclude that any use of any driven well by others before his application was consented to or allowed by him, except in the instances mentioned at Cortland, which were merely experimental tests, made by himself. Much less is there any evidence to show that there was any use of the invention by others for more than two years prior to his application.

Upon the question of infringement, the agreed statement of facts shows the following : " That the defendants have had in use on their farm for the past seven or eight years one or more driven wells, which wells were put down for the defendants by an ordinary well-driver in the following manner : A tube, of which the lower portion was perforated with small holes and the lower end provided with a point, was driven into the ground until it projected into the water, without removing the earth upwards, as in boring. The water then entered the tube through the perforations and was pumped up through the tube by an ordinary pump. That the defendants have never driven wells for themselves, except as above described, or for other purposes; never have sold or offered for sale driven wells, or the materials for driving them, but have simply used their own wells for their personal use on their farms."

It is now contended, on the part of the appellant, that the claim of the patent is for the process of driving the well, and not for the use of the well after it has been driven, and that consequently the appellant is not shown to have infringed; but, as has been shown in the case of *Eames* v. *Andrews*, the patent covers the process of drawing water from the earth by means of a well driven in the manner described in the patent. The use of a well so constructed is, therefore, a continuing infringement, as every time water is drawn from it the patented process is necessarily used. As was said by Mr. Justice Blatchford in *Andrews* v. *Cross*, 19 Blatch. 294, 305 : " Under this construction the defendant has' infringed by using the pump in a driven well, constructed in a house hired by him, to obtain a supply of water for the use of his family, although he may not have paid for driving the well, or have procured it to be driven. Such use of the well was a use of the patented process."

*The decree of the Circuit Court is accordingly affirmed.*

MR. JUSTICE FIELD, MR. JUSTICE BRADLEY, and MR. JUSTICE GRAY dissented.