AMERICAN SULPHITE PULP CO. v. CROWN–COLUMBIA PULP & PAPER CO.

(Circuit Court, D. Oregon. March 1, 1909.)

No. 3,237.

1. PATENTS (§ 288*)—SUITS FOR INFRINGEMENT—EQUITY JURISDICTION.
   The fact that a patent had but 48 days to run at the time of the commencement of a suit to enjoin its infringement does not deprive a court of equity of jurisdiction.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 465; Dec. Dig. § 288.*]

2. PATENTS (§ 288*)—SUITS FOR INFRINGEMENT—EQUITY JURISDICTION.
   Allegations in a bill for infringement, showing that complainant derives his benefit from the patent through the granting of licenses, do not deprive equity of jurisdiction on the ground that he has an adequate remedy at law, where it also shows that there is no established license fee for all users and prays an accounting of profits.
   [Ed. Note.—For other cases, see Patents, Dec. Dig. § 288.*]

3. PATENTS (§ 317*)—SUITS FOR INFRINGEMENT—PERMANENT INJUNCTION.
   A bill for infringement filed before the expiration of the patent, showing that defendant has in its possession and is using infringing structures,

states grounds for the granting of a perpetual injunction against their further use even after the patent has expired.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 317.*]

## In Equity.  On demurrer to bill.

The purpose of this suit is to enjoin the infringement of a patent. By the averments of the bill it appears that the complainant is the owner of a patent upon an invention for pulp digesters. The life of the patent extended to January 27, 1908. The complainant claims a monopoly of the patent, but shows that it is ready, able, and willing, and now stands ready, able, and willing, to supply the entire demand for the market; that since the grant of the letters patent the complainant has given full and ample notice to all pulp manufacturers of the United States from time to time of its ownership thereof, and that infringers thereof would be prosecuted, and all parties have been fully notified of the complainant's purpose; that the patent right has been established by suits in equity heretofore instituted in the courts of the United States; that the invention and letters patent have been and still are of great benefit and advantage to the complainant; that the public has largely acquiesced in the rights of complainant; that nearly, if not quite, two-thirds of all the pulp manufacturers in the United States using the sulphite process have availed themselves of the benefit and advantages arising from said letters patent by taking licenses from the complainant; that in the course of negotiating and selling such licenses it has been necessary to bring, or threaten to bring, many suits, as the mills in which the sulphite process is carried on are scattered throughout widely separated portions of the country, and often in remote districts, and because of the further fact that in every case the structure involved is a closed vessel, and the nature and character of the lining could not be learned without the consent of the owners thereof, and that, in spite of the fact that complainant and its agents have been diligent in investigating the matter of the infringements of its letters patent, it has been physically impossible for it and them to the present time to take up and prosecute all litigation; that it has not been possible to establish, and that complainant has not established, a fixed, certain, and uniform license fee for said licenses, for the reason that it appeared to complainant to be inequitable and unjust to do so, but that complainant has sought to obtain and has obtained in every case a license fee satisfactory in amount, both to itself and to its licensee, with reference to the size and character of the work carried on, the particular circumstances of each case determining the reasonable fee for the licenses in question; that the defendant, contriving to injure and deprive the complainant of the benefit and advantages which might otherwise have accrued unto it from the issue of said letters patent, and prior to the filing of the bill herein, has manufactured and used pulp digesters without the license or allowance, and against the will, of the complainant, and is still wrongfully using such digesters, whereby defendant has realized large profits, but has refused, and still refuses, to pay complainant a reasonable license fee or any license fee; that the complainant has no fixed and established uniform license fee, such as to constitute a measure of damages in an action at law; that complainant has heretofore, and since the issue of said letters patent, and prior to the institution of this suit, notified the defendant in writing of its willingness, upon receipt of a reasonable royalty, to grant a license under said patent for the past and future use of the said invention, and has offered and now offers so to license the use thereof by the defendant. The prayer seeks a discovery and demands an injunction, both provisional and permanent, and an accounting and recovery for the use of the patent.

The defendant has interposed a demurrer to the bill, assigning the following grounds, to wit: (1) Because the bill does not show facts entitling complainant to any equitable relief. (2) Because the patent had only 48 days to run. (3) Because the patent has already expired. (4) Because the court has no jurisdiction of the bill.

Benner & Foster and A. L. Veazie, for plaintiff.
Cake & Cake and Franklin T. Griffith, for defendant.

WOLVERTON, District Judge (after stating the facts as above). The strong objection to the bill is that it does not state a case for equitable cognizance; the principal reason urged being that it appears from the averments thereof that the complainant has a plain, speedy, and adequate remedy at law.

Preliminarily, it should be stated that the suit was instituted December 10, 1907, and the defendant was required, under the subpœna, to answer the exigencies of the bill January 6, 1908. The complainant's patent expired January 27, 1908—48 days after the suit was instituted. While counsel for defendant call attention to the fact that no effort was made during the life of the patent to obtain a provisional injunction, they do not seem seriously to urge that that fact alone would defeat the suit. They do say, however, that the fact affords strong reason why the request in the bill for an injunction must be held to be a mere pretext, not to be seriously considered.

It is a rule of equitable procedure in patent cases that if, in the ordinary course of practice, there is time between the date of the institution of the suit and the expiration of the patent to apply for and obtain a provisional injunction, the other averments of the bill showing ground for equitable interposition, the court will entertain jurisdiction and proceed in the cause, notwithstanding it may be that the patent will expire presently, and before the controversy can be finally determined. Mr. Justice Blatchford sustained a bill where the patent had but 26 days to run (Toledo Mower & Reaper Co. v. Johnston Harvester Co. [C. C.] 24 Fed. 739), and dismissed another where the patent would survive but 4 days (Mershon v. J. F. Pease Furnace Co. [C. C.] 24 Fed. 741).

The Supreme Court, in Clark v. Wooster, 119 U. S. 322, 7 Sup. Ct. 217, 30 L. Ed. 392, affirmed the holding of the lower court, in sustaining a bill filed with the patent but 15 days to run, the court saying:

"If the case was one for equitable relief when the suit was instituted, the mere fact that the ground for such relief expired by the expiration of the patent would not take away the jurisdiction, and preclude the court from proceeding to grant the incidental relief which belongs to cases of that sort."

In a later case, Beedle v. Bennet, 122 U. S. 71, 75, 7 Sup. Ct. 1090, 1092, 30 L. Ed. 1074, the Supreme Court says:

"As the patent was in force at the time the bill was filed, and the complainants were entitled to a preliminary injunction at that time, the jurisdiction of the court is not defeated by the expiration of the patent by lapse of time before final decree."

See, also, to the same purpose, Busch v. Jones, 184 U. S. 598, 22 Sup. Ct. 511, 46 L. Ed. 707; Brooks v. Miller (C. C.) 28 Fed. 615; Ross v. City of Ft. Wayne, 63 Fed. 466, 11 C. C. A. 288; Chinnock v. Paterson, P. & S. Tel. Co. (C. C.) 110 Fed. 199; United States Mitis Co. v. Detroit Steel & Spring Co., 122 Fed. 863, 59 C. C. A. 589; Carnegie Steel Co. v. Colorado Fuel & Iron Co. (C. C. A.) 165 Fed. 195.

In the case at bar an order to show cause why the provisional in-

junction should not issue might have been set down for hearing upon 10 days' notice, or even less, so that there was ample time for complainant to have obtained the injunction prior to the expiration of the patent, and the cause is within the rule.

But to the main contention, having found that the proximity in time of bringing the suit to the time of the expiration of the patent does not in itself defeat the cause, is the cause one for equitable interposition? The same principles of equity affecting jurisdiction must be applied in patent right cases as in other causes where equitable relief is sought, and, if jurisdiction will not attach in one case, it will not usually attach in the other. This is conceded. But it is alleged that the bill shows that complainant's only benefit to be derived by the patent is from its use by the public, and that, if the public be enjoined, the revenue to be derived from the patent would cease. Hence it is insisted that it is not the real purpose to prevent any one from using the patent, but to require payment from such as do use it; and thus the owner can have no other remedy than the recovery of a license fee proportionate in amount to the value of the use. The law, it is claimed, in this view affords an adequate remedy. The reasoning is faulty. The bill alleges a monopoly of the patent, and shows, in effect, that complainant is able to supply the market, but is willing that the public may use the patent upon satisfactory arrangement with complainant for payment of the license fee. There has never been given authority to any one to use without the consent of the complainant, but parties have, contrary to the rights of the patentee, surreptitiously employed the patent right in their manufacturing institutions, which is tortious as to the complainant. The latter has the right to demand that such a practice cease. While having that right, it has also the right to require of the defendant an accounting for the profits earned by the user by reason of its tortious appropriation of the patent. Because the use is open to those who are willing to pay a license fee, it does not follow that any may use it without paying such fee, and so continue to use it in spite of the protest of the owner. Such a course of reasoning would entail a multiplicity of actions, to say the least, which, in itself, would be cause for invoking equitable interposition. This specific objection of counsel is pertinently answered in Peters v. Chicago Biscuit Co. et al. (C. C.) 142 Fed. 779. That case is in close analogy to this, and the reasoning of the learned judge is sufficient in itself to dispose of this case.

It seems to be thought that the allegation in the complainant's bill, as follows:

"That your orator has heretofore, and since the issue of said letters patent, and prior to the bringing of this suit, duly notified in writing the defendant herein, as hereinbefore set forth, of its willingness, upon the receipt of a reasonable royalty, to grant a license under said patent for the past and future use of the said invention and improvement, and has offered and now offers so to license the use thereof by this defendant"

—shows that complainant is seeking a license fee rather than injunctional relief. This, however, merely indicates complainant's previous practice in licensing the use of its patent; that is to say, a method by

which the market was supplied, with the use of the monopoly reserved in the complainant.

The further averments in the bill may now be considered. By the eleventh paragraph it appears that no fixed, certain, or uniform license fee has been established, and that the amount thereof has been dependent upon the size and character of the work being carried on and the particular circumstances of each case. By the twelfth paragraph, it further appears that the defendant has unlawfully realized large profits from the use of said patent, and continues in its refusal to pay complainant a reasonable or any license fee. By the fourteenth paragraph, that there has been established no uniform license fee such as to constitute a measure of damages in an action at law. Beyond all this, it appears that defendant has manufactured and used pulp digesters in its mill in infringement of complainant's patent, and is still willfully using the same, and will continue to so use them.

Applying the principle established by the previously cited authorities, namely, that the fact that the right of a permanent injunction is lost by an expiration of the patent pending the suit does not oust the court of jurisdiction, the cause being one for equitable relief in the first instance, would seem of itself to be decisive of the cause. Aside from this, there is still another cogent ground for equitable cognizance, the court having obtained jurisdiction by a timely commencement of the suit, which is, that the defendant has in its possession digesters constructed in pursuance of complainant's patent. As to these, the complainant has the right to have their further use by the defendant perpetually enjoined.

"The weight of authority seems to me," says Holt, District Judge, in Underwood Typewriter Co. v. Elliott-Fisher Co. (C. C.) 156 Fed. 588, 590, "to hold that goods manufactured during the life of a patent which infringed it cannot be sold or used after the expiration of the patent. The making of such goods during the existence of the monopoly which is created by that patent is in violation of the patent law, and, in my opinion, it is not until after the expiration of the patent that business rivals are at liberty to manufacture articles in conformity with the invention described in the patent for the purpose of selling them"—citing a number of authorities.

In Toledo Mower & Reaper Co. v. Johnston Harvester Co., supra, the court retained equitable jurisdiction on the ground, among other things, that the defendant had previously manufactured quantities of machines under the infringing patent, which it intended to put upon the market, and restrained any sale of such machines after the expiration of the patent. The weight of authority is in support of the position although holdings may be found to the contrary. American Diamond Rock-Boring Co. v. Sheldon (C. C.) 1 Fed. 870; American Diamond Rock-Boring Co. v. Rutland Marble Co. (C. C.) 2 Fed. 355; New York Belting & Packing Co. v. Magowan (C. C.) 27 Fed. 111.

The license fee not being fixed, which, by the nature of things, was not susceptible of uniform regulation in amount, and the realization of large profits from the use of the patent by defendant, to determine which an accounting is necessary, are potent factors in inducing equitable cognizance. Further than this, it would seem that a discovery is necessary to determine the dimensions of the digester or digesters that defendant was or may have been using.

The court is of the opinion, therefore, that the demurrer should be overruled.

I have not overlooked the authorities cited by counsel for defendant. These authorities, while sound in principle, do not seem to me to be applicable under the facts of the present controversy.