A. SCHRADER'S SON, Inc., v. WEIN SALES CORPORATION.

(District Court, E. D. New York. December 29, 1924.)

1. Patents ⬡⟷75—Experimental use of device does not bar patent; "public use."

Experimental use of a device by the inventor in his own workshop to which no one except employés was admitted held not a "public use," which barred the right to a patent under Rev. St. § 4886 (Comp. St. § 9430).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public Use (in Patent Law).]

2. Patents ⬡⟷73—Anticipation by foreign publications.

That an invention as first made was not identical with the construction as finally patented does not render the patent void for anticipation by foreign patents published between that date and the date of application, where it was essentially like the structures of such patents.

3. Patents ⬡⟷66—Effective date of British patent is date of sealing.

The effective date of a British patent is its date of sealing which is never done until a complete specification has been filed and accepted.

4. Patents ⬡⟷66—Effective date of French patents is date of issue.

The effective date of French patents is date of issue and not of application.

5. Patents ⬡⟷66—Effective date of German patents is date of publication.

The effective date of German patents is date of publication.

6. Patents ⬡⟷328—Twitchell patent, No. 927,-298, for pressure gauge for pneumatic tires, held valid and infringed.

The Twitchell patent, No. 927,298, for pressure gauge for pneumatic tires, held not anticipated and for a pioneer invention, which entitles it to a wide range of equivalents; claims 1, 2, and 3 also held infringed.

In Equity. Suit by A. Schrader's Son, Incorporated, against the Wein Sales Corporation. Decree for complainant.

Fraser, Myers & Manley, of New York City (Eugene V. Myers, Arthur C. Fraser, and William A. Redding, all of New York City, of counsel), for plaintiff.

Steuart, Chapman & Moore, of New York City (James L. Steuart, of New York City, of counsel), for defendant.

CAMPBELL, District Judge. This is a suit in equity brought by the plaintiff, the owner of patent No. 927,298, issued by the United States Patent Office to Charles R. Twitchell, for pressure gauge for pneumatic tires, dated July 6, 1909, against the defendant, for an injunction restraining the alleged infringement of said patent, and to recover damages alleged to have been suffered thereby. The defendant has interposed the answer of invalidity and noninfringement.

This action is based upon claims 1, 2, and 3 of the patent in suit, which read as follows:

"1. As an article of manufacture, a pressure gauge for pneumatic tires comprising a housing open at its inner end, which latter is designed to fit over and inclose the casing of the air valve of a pneumatic tire, means at such end for fitting against and

unseating such air valve, a spring-held gauge-bar within said housing and projecting through an opening in the outer end thereof, and a piston-head at the inner end of said gauge-bar.

"2. As an article of manufacture, a pressure gauge for pneumatic tires comprising a housing open at one end, a seat at such end for fitting against the air-valve casing of a pneumatic tire, means also at such end for unseating such air-valve, and a spring-held gauge-bar within said housing and projecting through an opening in the outer end thereof, said gauge-bar having a piston-head at its inner end.

"3. As an article of manufacture, a pressure gauge for pneumatic tires comprising a housing open at one end, a seat at such end for fitting against the air-valve casing of a pneumatic tire, said seat having a central opening, a fixed part extended through said opening for unseating such air-valve, and a spring-held gauge bar located within said housing and projecting through an opening in the outer end thereof, said gauge-bar having a piston head at its inner end."

The bill as originally filed also charged infringement of the patent to Robert Faries, No. 1,451,038, and the patent to William P. Hammond, No. 1,451,257, but these two last-mentioned patents were before trial withdrawn without prejudice, and the action proceeded to trial on the patent to Charles R. Twitchell, No. 927,298.

[1] The defendant first attacked the patent contending that the alleged invention forming the subject-matter of the patent in suit was in public use for more than two years prior to the date of the application for the patent in suit, and therefore under the provisions of section 4886 of the Revised Statutes (Comp. St. § 9430) the patent in suit was invalid. With this contention I cannot agree.

The patentee commenced work in September, 1906, and produced a gauge like plaintiff's Exhibit 33 in the first week of that month. The application for the patent was filed October 9, 1908.

He was engaged in experimenting with a mode of making leather into tires and machinery to do different parts of the work in making tires at an experimental factory situated at Wilmington, Cal., which is near Los Angeles, Cal. During the time he was experimenting in making such tires, he found that much of his difficulty arose from the improper inflation of the tires, and he then invented at the time hereinbefore stated the gauge, Exhibit 33. Nobody was al-

lowed in the factory but the patentee and his employés, and the said testing gauge apparatus was another of the experiments that they were using.

Exhibit 33 was not a commercially practical device, and the patentee was using it only in an experimental way and as an experiment. None of the said gauges were sold nor were any of them used by anybody but the patentee or his workmen, and when used by them it was under the supervision of the patentee and only at said factory. Such experimental use of an undeveloped invention is not a public use within the meaning of the statute. Walker on Patents, § 95; Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000; Beedle v. Bennet, 122 U. S. 77, 7 S. Ct. 1090, 30 L. Ed. 1074.

I therefore find that the invention forming the subject-matter of the patent in suit was not in public use more than two years prior to the date of the application for the patent in suit.

The defendant offered in evidence 78 patents to prove the prior art, and the patents so cited were either those which had been cited in prior proceedings or those which added nothing to the record, and it therefore seems unnecessary to separately consider all of the said patents offered.

The defendant's expert selected the following of the patents offered in evidence as those which he considered as the closest approximation of the patent in suit:

British patent No. 17,388 to Turner, 1906, for improvements relating to pressure indicators for use in connection with automatic tyres and the like. British patent No. 29,441 to Hill, 1906, for improvements in pressure indicators for pneumatic tyres.

French patent No. 372,316 to Turner, 1907, for improvements in pressure gauges. French patent No. 386,144 to Buisson, 1908, for apparatus verifying the pressure of pneumatic tires. French patent No. 372,944 to Société Continental, 1907, for pressure testing and inflating appliance.

German patent No. 186,717 to Turner, 1906, for instrument for effecting a temporary connection between the valve of a tire and a manometer.

United States patent No. 341,841 to Gleason, 1886, for gas test gauge. United States patent No. 597,415 to Holmes, 1898, for valve. United States patent No. 602,242, to Richards, 1898, for air-indicator for bicycle tires.

British patent No. 173,388, which was the same as French patent No. 372,316, and British patent No. 29,441, were offered by the defense and considered in an action of

Twitchell v. Auto-Pressure Gauge Co. (no opinion filed)

French patent No. 372,316, which was the same as British patent No. 173,388, French patent No. 386,144, and United States patents No. 597,415, and No. 602,242, were offered by the defense, and considered in action of Schrader v. Protex Tire Gauge Company. French patent No. 372,944 and United States patent No. 602,242 were offered by the defense and considered in action of Twitchell v. Rudolph & West (Supreme Court, District of Columbia). French patent No. 372,944 and United States patent No. 602,242 were offered by the defense and considered in action of Schrader v. E. Edelmann & Co. (consent decree, no opinion filed).

German patent No. 186,717 was the same as British patent No. 17,388 and French patent No. 372,316.

Therefore the only one of said patents on which defendant relies, which has not in effect or in fact been litigated in former actions, is United States patent No. 341,841 to Gleason.

The operation of the gauge disclosed in said patent is stated in the patent to be as follows:

"The operation of my gauge is as follows: The base B is slipped over the gas-tip to be inspected until the elastic washer is so seated around it as to make a tight joint, so that all the gas will have to pass through the tube A and slot or line of holes h. The gas is then turned on without being lighted, when the flow or pressure will carry the cup d up on the tube A until the flow of gas finds free escape through the slot or line of holes h. The indicator C will be carried up with the cup d, and by observing the markings of the scale reached by its point the inspector ascertains the number of feet of gas passing per hour." Page 1, lines 52–65.

The gauge of the Gleason patent is not a pressure gauge but is a meter to measure the flow of the gas through a burner for a given period of time. It can only operate by allowing the gas to pass out through the holes, and this is exactly the opposite of what is required in a tire gauge, because in such a gauge it is sought to measure the pressure without leakage of air.

The object of the tire gauge is to instantaneously measure the pressure of gas or air which is quiet, while the object of the Gleason gauge is to measure gas in motion.

The rubber gasket with a hole in it at its foot, which is designed to completely inclose the gas burner nozzle, adds nothing to the other patents offered in evidence which show what defendant's expert termed a "universal coupling." In fact, as good an example of what said expert called a "universal coupling" is shown in United States patent No. 597,415 to Holmes, which is for a coupling applicable to tire valves, but was disregarded as an anticipatory reference in the action of Schrader v. Protex Tire Gauge Co., (no opinion filed).

[2] Foreign patents, having an effective date later than September, 1906, are too late to affect the patent in suit. United States Revised Statutes, § 4923 (Comp. St. § 9469), which reads as follows:

"Whenever it appears that a patentee, at the time of making his application for the patent, believed himself to be the original and first inventor or discoverer of the thing patented, the same shall not be held to be void on account of the invention or discovery, or any part thereof, having been known or used in a foreign country, before his invention or discovery thereof, if it had not been patented or described in a printed publication."

This section was construed by the Supreme Court in Elizabeth v. Pavement Co., supra.

The foreign patents offered in evidence in the suit at bar, which were not patented or described in a printed publication prior to the first week of September, 1906, the date of invention or discovery by the patentee in the patent in suit, are no defense to the suit at bar, and this is true, although the Twitchell 1906 gauge was not identical with the construction of the patent in suit, because it is essentially like the most pertinent of the foreign patents offered in evidence, and therefore anticipates and disposes of them just as effectually as if its construction had been precisely that which was finally patented by Twitchell. Walker on Patents, § 69; Cochrane v. Deener, 94 U. S. 780, 24 L. Ed. 139.

[3] The effective date of a British patent is its date of sealing. Ireson v. Pierce (C. C.) 39 F. 795; Electrical Accumulator Co. v. Julien Electric Co. (C. C.) 38 F. 141; Bliss v. Merrill (C. C.) 33 F. 40; American Bell Telephone Co. v. Cushman (C. C.) 57 F. 842. A British patent is never sealed until after the complete specification has been accepted. A British patent is not published or patented until after the filing of the complete specification. Appert v. Brownsville Plate Glass Co. (C. C.) 144 F. 115; Schmertz v. Pittsburgh Plate Glass Co. (C. C.) 168 F. 73; Smith v. Goodyear, 93 U. S. 486, 23 L. Ed. 952.

[4] The effective date of French patents is the date of issue, not the date of application. Schmertz v. Pittsburgh Plate Glass Co., supra; Appert v. Brownsville Plate Glass Co., supra.

[5] The effective date of German patents is the date of publication. Walker on Patents, § 55; Queen & Co. v. R. Friedlander & Co. (C. C.) 149 F. 771; Merrell-Soule Co. v. Powdered Milk Co. (D. C.) 215 F. 922.

The following described foreign patents are therefore barred:

British patents having in every instance an effective date later than the acceptance date and later than the date of invention of the patent in suit: No. 9,727 to Southall; No. 22,441 to Sloper; No. 17,388 to Turner; No. 17,679 to Turner; No. 23,028 to Southall; No. 23,157 to Dunkley; No. 24,881 to Amphlet; No. 28,330 to Amphlet; No. 29,441 to Hill.

French patents having in every instance an effective date, which is set opposite the patent: No. 372,316 to Turner, March 30, 1907; No. 372,944 to Société Continental, April 23, 1907; No. 381,662 to Sloper, January 17, 1908; No. 386,144 to Buisson, June 4, 1908.

German patent having an effective date, which is set opposite the patent: No. 186,717 to Turner, June 8, 1907.

In the above lists are included all the foreign patents selected by the defendant's expert as those of the patents offered by the defendant which he considered as the closest approximation of the patent in suit.

Dial gauges with some form of connection for the tire valve were employed in all of said foreign patents, except British patent No. 17,679 to Turner.

Twitchell's press-on foot with valve opener were employed in a number of them, and a number of them, including British patent No. 17,679 to Turner, employed the screw-on appliance.

The following United States patents are also too late, but will be referred to later: No. 831,191 to Schubert; No. 838,219 to Stapley; No. 925,814 to Jones; No. 932,504 to Sloper.

The following patents, which are early enough in time for consideration, employ screw threads for attachment:

### United States Patents.

No. 8,361 to Faber; No. 16,428 to Allen; No. 23,166 to Gill; No. 28,724 to Allen; No. 128,401 to Kayser; No. 180,625 to Osborne; No. 190,790 to Snyder; No. 318,152 to Willard; No. 411,510 to Riley; No. 426,029 to Lusuardi; No. 487,515 to Bryon; No.

500,944 to Pickel; No. 511,706 to Lamplugh; No. 512,799 to Bronson; No. 544,998 to Smith; No. 552,653 to Welsh; No. 553,294 to Rogers; No. 599,682 to Burdick; No. 602,242 to Richards; No. 652,232 to Culp; No. 712,461 to Rumboski; No. 764,821 to Rock; No. 777,517 to Kellogg; No. 829,614 to Wolfe; No. 831,191 to Schubert; No. 838,219 to Stapley; No. 932,504 to Sloper.

### British Patents.

No. 7,724 of 1891 to Suiter; No. 5,025 of 1898 to Burdick; No. 20,395 of 1904 to Thompson.

One of these patents, United States patent No. 777,517 to Kellogg, employs a swivel coupling so that the gauge may always face the right way and overcome the objection to the screw-on gauge, the gradations on which when the joint is made tight may be facing the wrong way.

Slip joints, which defendant's expert called "universal couplings," are employed in the following patents which are early enough for consideration:

### United States Patents.

No. 39,114 to Brevoor shows plain metal tube designed to couple with rubber tube; No. 93,366 to Storer shows a tapered metallic nozzle capable of being inserted into the tyre-pipe of a blast furnace; No. 266,543 to Small and No. 341,841 to Gleason, each of which shows a rubber gasket adapted to be slipped over a gas burner; No. 577,438 to Lloyd shows a metal pump cylinder adapted to slip over a conical rubber packing placed on the nipple, called a sleeve; No. 582,425 to Jackson shows a pump cylinder having a gasket adapted to slip over a tire valve; No. 597,415 to Holmes shows a compressed air tube having a gasket adapted to be pressed against a tire valve; No. 641,181 to Bates shows a pump with a gasket adapted to be slipped over a tire valve; and No. 647,329 to Robinson, No. 684,001 to Smith, No. 695,002 to Smith, No. 695,199 to Eddy, No. 703,010 to Smith, and No. 763,707 to Austin each show a similar construction.

The defendant also contends that the universal coupling is shown in a number of foreign patents, but the patents in question I have already determined were not prior art as to the patent in suit.

The following United States patents show couplings which in a sense are universal, as defined by defendant's expert, but they are essentially permanent connections, because they would take a much greater time to apply than a screw coupling, as they must be worked over long corrugated nozzles: No.

118,603 to Getty shows an attachment to gas fitters' gauges provided with an ether-cup and peculiar cock; also a screwed neck for the reception of the gauge and a screw for the connection of the attachment to the line of pipe to be tested, and a coupling to connect with an air-pump. The rubber hose from the air-pump is worked over the corrugated nozzle F of the coupling E. No. 492,973 to Shepard shows a spirometer the mouthpiece of which is connected to the rubber tube by this form of coupling. No. 634,-537 to McDermott & Bennett shows a gas stove fixture having two of this form of couplings, but I cannot see what bearing this has on the patent in suit.

The following patents, in my opinion, are not for structures in analogous arts:

### United States Patents.

No. 174,496 to Dimock, for a spring balance for testing thread silk; Nos. 481,762 and 515,290 to Ives & Colman, each for a tire valve; No. 546,287 to Adler, for a shoemaker's measure; No. 555,664 to Schrader, for a tire valve and stopper; No. 660,445 to Lillicrap, for a tire gauge, but it is not a fluid pressure gauge and has no connection with the tire except to press against it; No. 703,086 to Rushbach, for a gauge for measuring the thickness of plates and the like; No. 793,320 to Porter relates to stop watches; No. 925,814 to Jones relates to indicating devices, particularly speed indicating devices.

In the effective prior art two United States patents show a gauge, a coupling adapted to connect with the tire valve and valve opener, as follows: No. 764,821 to Rock, in which the gauge is attached to the pump and the pump tube is attached to the valve, and there is no press-on coupling or fixed valve opener ready to operate immediately on pressing the gauge on the valve, but it screws on the valve and has a screw-down valve opener adapted to be operated after the coupling has been screwed on the valve; No. 777,517 to Kellogg shows the same structure as Rock, except that the gauge is mounted between the pump and the coupling instead of on the other side as in Rock.

Both of these patents require four operations in taking a pressure reading, and have been relied on by the defendant in every contested suit which has been brought under this patent, and are valueless as anticipations.

The following United States patents are the only two others offered to show the prior art which show any kind of a valve opener:

No. 712,461 to Rumboski shows a deflator which is operated by air pressure and would not open the tire valve or if it could it would not let any air up into the gauge, and therefore could not be used as a gauge; No. 838,-219 to Stapley could not be used as a gauge because it shows another pump coupling operating in the same way, and the pressure of the incoming air will not open the valve unless the tire is being pumped up.

My examination of the prior art convinces me that all of the elements of either of claims 1, 2, or 3 of the patent in suit, on which this action is based, are not shown in combination in any patent which is prior art to the patent in suit, nor are all of the said elements shown separately in patents which are prior art to the patent in suit.

No pressure gauge that simply presses on the valve, nor any fixed anvil or valve opener in any gauge, which requires only to be pressed into contact with the valve pin, was shown in the prior art.

The problem which confronted Twitchell was to produce a test gauge which would be compact, portable, and durable, and could be carried in the pocket or tool chest without the danger of being injured, and it was also necessary that the connection of the gauge with the tire should be made by merely pressing it on the valve so that it would register instantly and thus prevent any loss of air, and no structure is shown in the prior art which would meet these requirements.

This was accomplished in two operations by the Twitchell gauge, that of pressing it on the valve and taking it off, whereas at least four operations were required in the Kellogg and Rock structures.

No gauge of the dial type ever made a success on the market because such a gauge is too large for the pocket and too fragile for the tool chest.

It is also apparent that a screw-on foot is unfitted for the purpose of taking tire pressure because of the difficulty in starting the threads, the loss of air in screwing it on or off, and the fact that in screwing it on so as to make the joints tight its gradations may face the wrong way, and, if a swivel coupling be used, two hands are required to apply it.

The patent in suit distinguishes from all of the patents offered in evidence which constituted prior art by having a cylindrical or pencil type of registering mechanism, in which the indicating member is housed within the housing when not in use, and which is durable, portable, and compact.

The Twitchell invention is a complete article, admirably adapted to meet all of the conditions of tire pressure guaging as I have defined them, but the fundamental contribution

of Twitchell is the idea of momentarily and quickly applying it to the tire valve and establishing fluid conditions; the particular kind of gauging mechanism selected among the many alternative or equivalent forms is immaterial.

[6] In my opinion the claims of the patent in suit sued upon are valid, and the patent in suit is a pioneer patent entitled to a wide range of equivalents. This opinion is supported by the decisions of the courts in former actions in each of which the patent has been sustained.

In Twitchell v. Northam Auto Pressure Gauge Co. (no opinion filed), the defendant claimed that the gauge in question in that suit, known as the Sandham gauge, had a housing which was not open at one end, or, if it was, did not have at such end a seat for fitting against the air valve, or an anvil for unseating it. These parts are turned at a right angle in between the ends of the Sandham gauge. The court, after a trial, held all four claims of the patent in suit valid and infringed.

In Twitchell v. Rudolph & West Co. (Supreme Court, District of Columbia), the defendant showed that the housing of the gauge was closed at its inner end, with the exception of a small passage. The press-on foot with valve opener were at right angles to the gauge, and opposite to them was a pump; the gasket used in the press-on foot being capable of holding the gauge while pumping is going on. The court, after a trial, held claims 1, 2, and 3 of the patent in suit valid and infringed.

In A. Schrader's Son, Inc., v. E. Edelmann & Co. the defendant claimed that this gauge avoided the patent because it had no "spring-held gauge bar" as set forth in the claim. For the first time in any action on the patent in suit we find in the Edelmann gauge the added improvement of a "hold-up" indicator, which was not the invention of Edelmann. The court granted a motion for a preliminary injunction, and thereafter a decree was entered on consent.

In A. Schrader's Son, Inc., v. Protex Manufacturing Co., 254 F. 438, the defendant claimed that it did not have a gauge bar at all but had a gauge sleeve; that the gauge sleeve was not spring-held; that there was no opening in the outer end of the casing; and that, even if there was an opening, the gauge sleeve did not extend through it. The court granted a preliminary injunction, and on the trial held the patent valid and infringed.

In A. Schrader's Son, Inc., v. Protex Tire Gauge Co. (no opinion filed), the defendant, after the preliminary injunction had issued in said action of A. Schrader's Son, Inc., v. Protex Manufacturing Co., 254 F. 438, put out a new gauge known as the Rex gauge, and claimed it had no gauge bar at all. The court granted a motion for preliminary injunction.

Not only have the courts uniformly upheld the patent in suit, but there has also been evidenced general acquiescence in its validity, first by the plaintiff in this suit, who when action was brought against it for infringement purchased the patent, and also by Prest-O-Lite Company and others who have consented to decrees.

The commercial success of the patent in suit has been very great, and the small number of infringers shows that its validity has been very generally recognized.

Twitchell sold 175,000 of the gauges without any hold-up feature, his sales in all were 200,000 in about two years, from which it appears that there must have been a great need for such a gauge in order for a new article to meet with such success within that time, considering the much smaller number of automobiles then in use.

As I have hereinbefore held the patent in suit to be valid and a pioneer patent, and therefore entitled to a wide range of equivalents, I will now consider the question of infringement.

Claim 2 of the patent in suit comprises the following elements: (1) A housing open at one end; (2) a seat at such end for fitting against the air valve casing of a pneumatic tire; (3) means also at such end for unseating such air valve; (4) a spring-held gauge bar within said housing projecting through an opening in the outer end thereof; (5) a piston head at the inner end of the gauge bar.

The only apparent material differences between the said claims are as follows: Claim 1 provides for a housing adapted to fit over and inclose the casing of an air valve. Claim 2 provides for a seat to fit against the air valve casing. Claim 3 provides for a seat with a central opening and a fixed part extending through said opening.

The defendant's structure is shown in the drawing which is Plaintiff's Exhibit 27, and the numbers of the several elements shown on said drawing will be used in describing the same.

The housing 1 is open at its upper end and the gauge registers by passing out through the open end of the housing, it also has an opening in the lower end through a round rubber cushion 2, and projecting down through said cushion a valve pusher or open-

er *3* which opens the check valve in the tire. The flexible rubber tube *10*, called by defendant a capsule, reaches up through the spring. The periphery of the rubber tube *11* is clamped at the bottom between the washer *8* and the rubber cushion *2*.

In the defendant's structure the spring is a tension spring not a compression spring, but the two forms of springs are commonplace alternatives one for the other. The upper end of the rubber tube *10* rests against part *6*, and over that part *6*, which is a cylindrical form, and secured to the upper end of the spring, is placed the gauge bar.

The gauge bar in the defendant's structure is cylindrical instead of flat, and, instead of going down between the turns of the spring, that is, passing down through the center of the spring, as in the patent in suit, it passes down into the housing outside of the spring where the gauge bar and the spring and the housing overlap to give a compact short construction.

The defendant's structure has the same characteristics of adaptability for temporary reading of the pressure as that of the patent in suit. It is nonattachable, and is put in place and a tight joint made by hand pressure. It is compact, of rugged construction, easily carried in the operator's pocket, and, if put in a tool chest, will stand the rough usage it will there receive.

Defendant contends that the rubber capsule *10* and spring employed in the defendant's article are not and cannot be said to be in any sense the mechanical equivalent of the piston designated as *6* in the patent in suit, and, further, that the defendant's device differs from the patent in suit in that the defendant's indicator element is not attached to anything that could be characterized as a piston, and when it is forced out of its casing by frictional means it is retained in a definite position to indicate the degree of pressure which has been exerted upon the capsule, and when the air pressure is relieved the spring operates to collapse the capsule, and does not operate to restore the indicator bar to its primary position.

As I understand it, the defense on lack of infringement is that the defendant's device, the Wein gauge, has no spring-held gauge bar and no piston head at the inner end of the gauge bar.

The existence of a spring-held gauge bar in the defendant's structure, the Wein gauge, seems to be beyond question and not to be denied in the face of the Protex and Edelmann decisions, supra, because in both of them, as well as in the Rex, the gauge bar has been determined to be spring-held in the sense covered by the patent, and this without regard to whether it was flat or tubular.

The defendant contends that the gauge bar is the calibrated portion in both the patent in suit and defendant's device, and that it is not spring-held in the defendant's device and plaintiff's commercial structure, because when the pressure of the air is relieved the calibrated portion does not fall to its zero position but remains up.

This contention is erroneous, for the reason that during the operation the indicator cannot move until the tension of the spring is overcome, and defendant's real or primary gauge bar, as distinguished from its indicator, is literally spring-held in the same way as in plaintiff's patent in suit, and when relieved of the pressure of the air falls to zero.

The causing of the extension to remain up is an added improvement but not the invention of the defendant, and, even if it was, the invention of a mere improvement would not relieve from infringement, when, as in the suit at bar, the improvement would be uesless without the patent in suit. It therefore seems clear to me that the defendant's device has a spring-held gauge bar, and therefore the defense of noninfringement is reduced to the claim of the defendant that its device, the Wein gauge, has no piston head at the inner end of the gauge bar.

That the defendant's structure has a piston seems to be clearly shown by reference to United States patents No. 8,361 to Faber, No. 16,428 to Allen, and No. 599,682 to Burdick, cited by the defendant as part of the prior art, and the testimony of the experts, as the expert for the defendant said that he found a piston in the patent No. 599,682 to Burdick.

Other forms of pistons are shown in the prior art cited by the defendant, but they do not require detailed consideration; it being sufficient to call attention to the forms shown in United States patents No. 39,114 to Brevoor and No. 190,790 to Snyder.

The elastic piston and the sliding piston have both been known as pistons for many years, and have been used interchangeably, and effect the same result in substantially the same way.

I can find no functional difference between the Burdick piston and the piston in defendant's structure, and Burdick in his patent calls the part *16* a piston and the part *15* a cap or head. The only structural difference is that the defendant's rubber tube is closed at the top to avoid leakage where the tube contacts with the piston.

All of the claims 1, 2, and 3 of the patent in suit call for "a piston head at its inner end"; nowhere in said claims is there any mention of a sliding piston head.

Of course the fluid exerts a lateral pressure which in the patent in suit is confined against movement by the cylinder wall, and in the defendant's structure by the sides of the rubber sleeve, but this pressure is negligible compared to the longitudinal pressure which is the effective pressure and moves the only thing which can be moved; that is, the piston head or pressure head.

In the defendant's structure the piston head is the same as in Burdick, and is at the inner end of the gauge bar, and this is not altered by the fact that the gauge bar in the defendant's structure is extended so that its length is much greater than Burdick's.

In my opinion the patent in suit reads literally on the defendant's structure, and there is no need to apply the doctrine of equivalents, but, even if I am in error on that point, the structure of the defendant would clearly be an infringement of the patent in suit because, although part of the gauge bar skirts down below the piston head, that does not detract from the essential and fundamental operation of the defendant's structure, because the courts have interpreted the gauge bar as any movable member, such as a sleeve or indicator, and the elastic pressure head of the defendant's structure is a well-known and clearly understood alternative or equivalent for the sliding packed piston of the patent in suit.

The defendant's structure infringes claims 1, 2, and 3 of the patent in suit.

A decree may be entered in favor of the plaintiff as prayed for in the bill of complaint, with the usual order of reference.